**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| KORRIN T. WEBB,<br>*Plaintiff* | §<br>§<br>§ | |
| -vs- | §<br>§ | SA-24-CV-01034-XR |
| FRANK BISIGNANO, COMMISSIONER<br>OF SOCIAL SECURITY,<br>*Defendant* | §<br>§<br>§<br>§ | |

## ORDER ON REPORT AND RECOMMENDATION

On this date the Court considered United States Magistrate Judge Elizabeth S. Chestney's Report and Recommendation ("R&R"), filed August 7, 2025, recommending that the Court affirm the denial of Plaintiff Korin Webb's application for disability-insurance benefits under Title II of the Social Security Act (ECF No. 21), and Plaintiff's timely objections thereto (ECF No. 22). After careful consideration, the Court issues the following order.

### BACKGROUND

**I.  Plaintiff's Application for Benefits**

Plaintiff filed his applications for DIB and SSI in February 2023, alleging disability beginning March 15, 2022. Tr. at 185–86. At the time he filed his applications, Plaintiff was 47 years old with two years of a college education. Tr. at 185, 218. Plaintiff worked as a corpsman in the military from 2003 to 2017, when he was honorably discharged. Tr. at 36–37, 182. As a corpsman, Plaintiff worked in military hospitals and clinics providing medical care and assisting with triage. Tr. at 48. Plaintiff was twice deployed to Iraq and has a 100 percent service-connected disability rating through the VA. Tr. at 36–37, 48, 182, 3789. Since his discharge, Plaintiff has performed intermittent work in customer service at a hardware store, as a warehouse associate for Amazon, and as a medical coder at a doctor's office. Tr. at 218.

Plaintiffs applied for benefits based on PTSD, anxiety, depression, ADD, recurring blood clots, separated shoulder, and lumbar spinal issues. Tr. at 217. Plaintiff completed an Adult Function Report in support of his application in February 2023, in which he described his mental limitations stemming from anxiety, panic attacks, depression, and PTSD, as well as physical limitations stemming from back, shoulder, and leg injuries, and deep vein thrombosis ("DVT"), which he asserts prevents prolonged sitting and standing. Tr. at 228–29.

## II.     Consultative Examinations

Dr. Tom Gorsuch, Ph.D., performed a Consultative Psychological Examination of Plaintiff on April 10, 2023. Tr. at 4073–79. According to Dr. Gorsuch's report, Plaintiff presented as friendly, cooperative, and well groomed, and he easily established rapport. Tr. at 4077. There was no indication of any psychomotor agitation, unusual movements, physical disabilities, or deficits in expressive or receptive language. *Id.* Plaintiff had goal-directed thinking, organized thought processes, and was oriented as to time and place. *Id.* Nor did Plaintiff present with any delusional thinking, paranoid or obsessive thoughts, suicidal ideations, or perceptual abnormalities. *Id.* Dr. Gorsuch found Plaintiff's remote memory intact; his concentration and attention adequate; him to have good insight and adequate judgment; and to be compliant with his medications. Tr. at 4078. Plaintiff did, however, display some deficits in short-term memory and recall. *Id.* Dr. Gorsuch diagnosed Plaintiff with PTSD and ADHD and found him to be "medically guarded" but gave him a fair prognosis with opportunity for improvement with consistent mental health treatment. Tr. at 4079. Dr. Gorsuch did not provide an opinion as to Plaintiff's work-related mental limitations.

Dr. William Culver performed a physical Consultative Examination on April 26, 2023. Tr. at 4083–89. Dr. Culver's report describes Plaintiff as having a normal behavioral affect and being pleasant and cooperative. Tr. at 4084. Dr. Culver noted that Plaintiff had a normal gait; normal

musculoskeletal structure; normal cervical and thoracic spine; normal range of motion of the entire spine; and normal sensory responses. *Id.* Plaintiff had some pain in his left shoulder and lumbar spine with extension but no spasms or other abnormalities. Tr. at 4086. Plaintiff was able to heel toe walk, squat and rise, and get on and off the exam table with no difficulty. Tr. at 4084. Dr. Culver diagnosed Plaintiff with PTSD, anxiety disorder, agoraphobia, left impingement syndrome, degenerative disc disease of the lumbar spine, chronic low back pain, and Factor V deficiency. Tr. at 4088. Based on these conditions, Dr. Culver found that Plaintiff "should avoid walking or standing for long periods, deep knee bending, squatting, kneeling, crawling, climbing ladders or stairs, repetitive lumbar bending or overhead work, working off ground and lifting greater than ten pounds from floor to waist and twenty from waist to shoulder." *Id.*

### III.    SSA's Denial of Benefits

Based on Plaintiff's medical records and the two consultative examinations, SSA denied Plaintiff's application for DIB and SSI on May 23, 2023, and again upon reconsideration on August 17, 2023. Tr. at 65–82. At both the initial and reconsideration levels, the State Agency Psychological Consultants ("SAPCs") found Plaintiff to have mild limitations in all four areas of the Psychiatric Review Technique ("PRT"),[1] known as the Paragraph B criteria, and not to have any limitations for purposes of a mental residual functional capacity ("RFC"). Tr. at 67–70, 79–80. The State Agency Medical Consultants ("SAMCs") found Plaintiff to have the RFC to perform medium work with limited overhead reaching on the left side due to his left shoulder impairment. Tr. at 69, 79–80.

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and appeared before ALJ Matthew Allen on March 4, 2024. Tr. at 38–64. Plaintiff, his attorney, and a vocational

---

[1] The PRT is the method used for evaluating mental impairments at all levels of the administrative review process. 20 C.F.R. § 404.1520a(c)(3).

3

expert attended and provided testimony at the hearing. Tr. at 38. Plaintiff testified that he lives with his four adult children, who help him with his activities of daily living, his household chores, and remembering to take his medications. Tr. at 49–50. Plaintiff described his back pain as "a little bothersome" and again mentioned issues with recurrent blood clots, which makes sitting difficult. Tr. at 51, 59. Plaintiff also testified that his left shoulder separation makes it harder for him to lift overhead with his left arm and limits his range of motion. Tr. at 53. As to his mental limitations, Plaintiff testified that he struggles in crowds due to his PTSD and anxiety and has difficulty with concentration and focus. Tr. at 51, 54. As to getting along generally with others, however, Plaintiff testified that his participation in the Wounded Warrior Project has helped him immensely, though he is not particularly sociable. Tr. at 54–55. Plaintiff testified that he had issues holding down any job since he was discharged from the military due to issues with anxiety and interacting with his supervisors. Tr. at 57.

In determining whether a claimant is disabled, the Commissioner uses a sequential, five-step approach, which considers whether: (1) the claimant is currently engaged in substantial gainful activity, (2) he has a severe impairment, (3) the impairment meets the severity of an impairment enumerated in the relevant regulations, (4) that impairment prevents the claimant from performing past relevant work, and (5) that impairment prevents him from doing any relevant work. *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). If the claimant gets past the first four stages, then the burden shifts to the Commissioner on the fifth step to prove the claimant's employability. *Id.* A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987); *see also* 20 C.F.R. § 404.1520(a)(4).

The ALJ issued an unfavorable decision on April 1, 2024. Tr. at 18–30. At step one, the ALJ found that Plaintiff met the insured status requirements of the SSA through June 30, 2026, and, although Plaintiff engaged in substantial gainful activity during October to December 2023, there had been other continuous 12-month periods during which he did not. Tr. at 20. At step two, the ALJ concluded Plaintiff has the following severe impairments: disorders of the lumbar spine, degenerative changes of the left shoulder, depression/bipolar disorder, anxiety, ADHD, and PTSD. Tr. at 21. The ALJ found Plaintiff's recurrent blood clots, i.e., DVT, to be non-severe. *Id.*

At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments to be considered presumptively disabled. Tr. at 21–23. The ALJ considered Listings 1.15 (skeletal spine disorders), 1.16 (lumbar spinal stenosis), and 1.18 (abnormality of a major joint) and noted that Plaintiff could not satisfy these listings because there was no documented need for an assistive device involving the use of both hands. Tr. at 21–22. In evaluating various listings involving mental limitations, the ALJ applied the PRT and found moderate limitations in all four Paragraph B criteria. Tr. at 22.

Before step four, the ALJ concluded that Plaintiff has the RFC to perform light work[2] with certain additional physical and mental limitations: the ALJ limited Plaintiff to frequent[3] stooping and frequent overhead reaching with the left, non-dominant upper extremity; found Plaintiff able to understand, remember and carry out detailed, but not complex, instructions; determined Plaintiff can use judgment to make detailed, but not complex, work-related decisions; limited Plaintiff to

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b). Jobs in this category require "a good deal of walking or standing." *Id.*
[3] Frequent means "occurring from one-third to two-thirds of the time," i.e., approximately 2.6 to 5.3 hours in an eight-hour workday. Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251, at *6 (S.S.A. 1983).

5

frequent interaction with supervisors, coworkers, and the public; and found Plaintiff can deal with frequent routine changes in the work setting. Tr. at 23.

Based on this RFC, the ALJ concluded Plaintiff could not perform any of his past relevant work but could perform other work in the national economy, including the work of an office worker and mailing clerk, and is therefore not disabled. Tr. at 28–29. The Appeals Council denied review on July 11, 2024, and Plaintiff thereafter filed this appeal of the administrative determination. Tr. at 1–3.

## IV.   The Magistrate Judge's Recommendation to Affirm the Denial of Benefits

On appeal, Plaintiff raises three points of error, arguing that (a) the physical RFC and (b) the mental RFC were not supported by substantial evidence and were the result of reversible legal error, and that (c) the ALJ's analysis of his subjective symptoms was flawed because it was based on selective consideration of the evidence. ECF No. 10.

An RFC determination is the most an individual can still do despite his limitations. 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, the ALJ must consider all the evidence in the record, including the limiting effects of all documented impairments, regardless of whether those impairments are severe or non-severe. *Id.* § 404.1545(a)(1)–(3). The relative weight given to the evidence contained in the record is within the ALJ's discretion. *Chambliss v. Massanari*, 269 F.3d 520, 523 & n.1 (5th Cir. 2001) (per curiam). To that end, the ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (per curiam). Furthermore, "RFC determinations are inherently intertwined with matters of credibility, and the ALJ's credibility determinations are generally entitled to great deference." *Acosta v. Astrue*, 865 F. Supp. 2d 767, 790 (W.D. Tex. 2012) (citing *Newton*, 209 F.3d at 459 (internal quotation omitted)).

Applying this deferential standard of review, the Magistrate Judge recommended affirming the denial of benefits, finding no reversible error in the evaluation of Plaintiff's physical and mental impairments or in the consideration of the evidentiary record. ECF No. 21.

### A. Physical RFC

Plaintiff asserts that the ALJ committed reversible error by failing to accommodate and consider his need for a cane or functional limitations arising from his DVT, failing to explain his reasons for departing from Dr. Culver's opinion in some respects, and "playing doctor" by substituting his own lay opinion for that of medical providers.

To begin, the Magistrate Judge found that the ALJ's RFC determination was grounded in the evidence and that Plaintiff failed to establish a medically documented need for a cane or accommodations related to his DVT. ECF No. 21 at 7–16.

As evidence that he needs a cane, Plaintiff relies not on contemporaneous medical documentation but on his own statement that he was prescribed a cane in 2012 and a psychiatry intake from 2017 indicating that he used a cane. The Magistrate Judge concluded that this evidence was insufficient to demonstrate that the cane was medically necessary under SSR 96–9p. *See* Policy Interpretation Ruling Titles II and XVI: Determining Capability to Do Other Work— Implications of a Residual Functional Capacity for Less than a Full Range of Sedentary Work, SSR 96–9p, 1996 WL 374185, at *7 (S.S.A. July 2, 1996) ("To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device . . . and describing the circumstances for which it is needed[.]"). Moreover, even if the ALJ erred in failing to reference SSR 96–9p in his determination, it was supported by substantial evidence in the record that Plaintiff ambulated without assistance, had a normal gait, and was engaged in active exercise, including dog walking and had plans to begin

running again soon. *See* ECF No. 21 at 10; *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (error is only harmful if it is conceivable ALJ would have reached different conclusion on the record).

Plaintiff argues the ALJ failed to properly evaluate his DVT, which causes recurrent blood clots and requires elevation of his legs, erroneously dismissed it as non-severe impairment, and failed to consider it in determining his RFC. The Magistrate Judge recommended that the Court reject this argument because Plaintiff did not provide evidence that his DVT required leg elevation or imposed other work-related restrictions. Indeed, Plaintiff's only blood clot episodes occurred well before the relevant period and outside of Plaintiff's current treatment, and his exam findings showed normal range of motion and strength in his lower extremities, which were free of tenderness or swelling. In sum, the Magistrate Judge reasoned that Plaintiff's use of compression stockings to reduce possible swelling and treatment for DVT did not establish that the condition functionally impairs Plaintiff's ability to work.

Third, Plaintiff argues the ALJ failed to explain his reasons for dismissing several aspects of Dr. Culver's opinion that Plaintiff should avoid walking or standing "for long periods of time," deep knee bending, squatting, kneeling, crawling, climbing, lumbar bending, overhead work, and lifting anything greater than 10 pounds from the floor to waist and 20 pounds from waist to shoulder. While the ALJ found Dr. Culver's opinion partially persuasive and supported by other medical evidence,[4] the ALJ also found that the opinion was "vague," "not expressed in vocationally relevant terms," and partially unsupported by other evidence in the record. The Magistrate Judge recommended that the Court reject Plaintiff's argument because the ALJ was not

---

[4] Ultimately, the ALJ found Plaintiff capable of light work (lifting no more than 20 pounds at a time with frequent lifting or carrying of up to 10 pounds and a good deal of walking or standing) and frequent stooping and frequent overhead reaching with the left upper extremity.

8

required to adopt Dr. Culver's opinion wholesale and his reasons for affording only partial weight to the opinion were supported by substantial evidence in the record. ECF No. 21 at 13–14.

Finally, Plaintiff argues that the ALJ's evaluation of Plaintiff's physical capabilities is unsupported because there is no medical opinion that Plaintiff could perform light work and the ALJ substituted his own lay opinion for that of the medical providers. The Magistrate Judge recommended that the Court reject this argument because the ALJ's determination was supported by substantial evidence and reviewing courts are not permitted to reweigh the evidence. *See id.* at 14–16 (citing *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). The ALJ has the sole responsibility of determining a claimant's RFC and determinations need not mirror any single medical opinion. (citing *Webster v. Kijakazi*, 19 F.4th 715, 719–20 (5th Cir. 2021) and *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012) (per curiam)).

B.   **Mental RFC**

Plaintiff argues that the ALJ failed to (1) account for his moderate limitations in concentration, persistence, and pace, (2) his social limitations, and (3) apply SSR 85-15 in assessing Plaintiff's mental capacity.[5] Plaintiff has not, however, identified any specific records that the ALJ should have considered but ignored in fashioning the RFC. *See* ECF No. 21 at 18.

The ALJ found Plaintiff has the mental RFC to understand, remember, and carry out detailed, but not complex, instructions; to use his judgment to make detailed, but not complex, work-related decisions; to interact frequently with supervisors, coworkers, and the public; and to deal with frequent routine changes in the work setting.

The Magistrate Judge found that the ALJ's assessment of mental limitations was supported by the record and consultative examination findings, as Plaintiff's symptoms were managed with

---

[5] *See* Titles II & XVI: Capability to Do Other Work-The Medical-Vocational Rules As A Framework for Evaluating Solely Nonexertional Impairments, SSR 85-15, 1985 WL 56857 (S.S.A. 1985).

9

medication and therapy and did not preclude work within the defined RFC. *See id.* at 16–19. The moderate limitations identified by Dr. Gorsuch, based on Plaintiff's occasional difficulty following written and spoken instructions and some deficits in short-term memory, do not automatically translate into specific RFC limitations. *See id.* at 17. The ALJ accounted for Plaintiff's moderate limitations by restricting Plaintiff to detailed but not complex tasks. Moreover, evidence showed that Plaintiff in fact *benefited* from social interaction—he reported improvement in mood and anxiety when working or engaging socially. *See id.* at 18.

Finally, the Magistrate Judge held that the record included no evidence implicating an analysis under SSR 85-15, which applies to claimants exclusively facing mental impairments, is limited to those cases in which the claimant suffers from a mental impairment that "causes a severe adverse reaction to even the mildest demands of work." *Id.* at 19 (quoting *Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir. 1995)).

### C. Selective Consideration of Evidence

Finally, the Magistrate Judge addressed Plaintiff's complaints that the ALJ improperly discounted Plaintiff's subjective complaints about pain and mental health symptoms and failed to give proper weight to the VA's 100% disability rating.

To begin, the Magistrate Judge found that the ALJ followed the required two-step "objective-subjective" process for evaluating subjective symptoms, determining that Plaintiff's medically determinable impairments caused *some* of his alleged symptoms but that his statements concerning the intensity and limiting effects of his symptoms were inconsistent with the medical evidence and other evidence in the record. *See* ECF No. 21 at 20–21.[6] The ALJ was at liberty to discount Plaintiff's testimony concerning his subjective symptoms in light of his conservative

---

[6] *See* Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2017 WL 5180304, at *3 (S.S.A. Oct. 25, 2017); 20 C.F.R. § 404.1529(a) and *Salgado v. Astrue*, 271 F. App'x 456, 458 (5th Cir. 2008) (per curiam).

10

treatment history and normal examination findings. *See Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991) ("It was within the discretion of the ALJ to discount [the applicant]'s complaints of pain").

Similarly, the Magistrate Judge held that, while the ALJ acknowledged the VA rating, he was not required to adopt it or analyze its underlying evidence in detail. ECF No. 21 at 22; *see also* 20 C.F.R. § 404.1504 (2017) ("[A] decision by any other governmental agency [including the VA] about whether you are disabled . . . is not binding on [the Commissioner] and is not [a] decision about whether you are disabled . . . under our rules."). Moreover, Plaintiff's appeal did not identify specific evidence that the ALJ purportedly ignored or explain how its consideration could have altered the overall result in this case. *See* ECF No. 21 at 22 (citing *Morris*, 864 F.2d at 336 (addressing harmless error standard)). Thus, the Magistrate Judge concluded that the ALJ's analysis did not overlook material evidence.

Plaintiff filed timely objections to the R&R (ECF No. 22), which the Court addresses herein.

## DISCUSSION

### I. Legal Standard

A party may serve and file objections to a Report and Recommendations within fourteen days. FED. R. CIV. P. 72(a), (b)(2). "Parties filing objections must specifically identify those findings objected to. Frivolous, conclusive [sic] or general objections need not be considered by the district court." *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982), *overruled on other grounds by Douglass v. United States Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

Courts must review *de novo* any of the Magistrate Judge's conclusions to which a party has specifically objected. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo

determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). Any sections that were not clearly objected to are reviewed for clear error to determine whether they are contrary to law. *Id.*; *see also United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989), *cert. denied*, 492 U.S. 918 (1989).

## II.     Analysis

Plaintiff objects that the Magistrate Judge took too narrow a view of the facts and failed to address prejudicial errors committed by the ALJ, including the improper rejection of all medical opinions, failure to develop the record, failure to consider or explain the rejection of critical evidence favorable to Plaintiff, and failure to scrutinize the record. ECF No. 22.

In reviewing the denial of benefits, the Court is limited to a determination of whether the Commissioner, through the ALJ's decision,[7] applied the proper legal standards and whether the Commissioner's decision is supported by substantial evidence. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence and credibility assessments are for the Commissioner, not the Court, to resolve. *Id.* While substantial deference is afforded the Commissioner's factual findings, the Commissioner's legal conclusions, and claims of procedural error, are reviewed *de novo*. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

---

[7] Here, because the Appeals Council declined to review the ALJ's decision, the decision of the ALJ constitutes the final decision of the Commissioner, and the ALJ's factual findings and legal conclusions are imputed to the Commissioner. *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005); *Harris v. Apfel*, 209 F.3d 413, 414 (5th Cir. 2000).

To begin, "[i]t is the *ALJ*'s responsibility to determine a claimant's RFC, and such an assessment is not a medical opinion." *Joseph-Jack v. Barnhart*, 80 F. App'x 317, 318 (5th Cir. 2003) (emphasis added). Plaintiff's insistence that the ALJ base his decision on medical opinions cannot be reconciled with the new regulatory framework, which does not require the ALJ to defer to *any* medical opinion. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."). And even under the prior framework, the Fifth Circuit's decision in *Ripley v. Chater* made clear that the ALJ *could* determine the RFC without a specific medical opinion so long as substantial evidence supported the determination. 67 F.3d 552, 557 (5th Cir. 1995). The Fifth Circuit expressly stated that the absence of a medical source statement describing the types of work that the applicant is still capable of performing does not in itself make the record incomplete, and the proper inquiry focuses on whether the decision of the ALJ is supported by substantial evidence. *Id.*

The ALJ's RFC analysis complied with the regulations. The ALJ's role was to "assess [Webb's RFC] based on all the relevant medical and other evidence . . . . including limitations that result from [his] symptoms, such as pain, provided by [Webb]." 20 C.F.R. § 404.1545(a)(3) (internal citations omitted).

There was no relevant medical evidence covering the applicable period demonstrating that Webb needs a cane. Similarly, Plaintiff's DVT diagnosis occurred well before the relevant period and falls outside of his current treatment. His exam findings were normal, and Plaintiff failed to point to any evidence that DVT required leg elevation or imposed other work-related restrictions.

Plaintiff disputes the ALJ's conclusion that the RFC restriction to light exertion with additional postural limitations and reaching restrictions account for his degenerative disc disease

13

of the lumbar spine and the degenerative joint disease limiting function in his left shoulder. ECF No. 22 at 3 (quoting Tr. at 25). But the ALJ explained his reason for partially crediting Webb's testimony that these conditions were significantly limiting, noting that he "continued on a conservative treatment plan of naproxen, diclofenac, and heat/ice treatment" for shoulder pain and "continued on gabapentin for back pain." Tr. at 24–25.

Plaintiff further argues the ALJ failed to explain his reasons for dismissing several aspects of Dr. Culver's opinion that Plaintiff should avoid walking or standing "for long periods." ECF No. 22 at 5. But the ALJ explicitly stated that he found Dr. Culver's opinion to be only partially persuasive because it was "vague, and the limitations were not expressed in vocationally relevant terms, limiting the persuasiveness of the opinion." Tr. at 27. The mere fact that an ALJ characterizes some portion of a consultative examiner's report as "vague" does not render it "inadequate or incomplete" such that further record development is required. *See Karen W. v. O'Malley*, No. 4:23-CV-04330, 2025 WL 816683, at *5 (S.D. Tex. Feb. 24, 2025), *report and recommendation adopted sub nom. Wolfe v. O'Malley*, 2025 WL 816681 (S.D. Tex. Mar. 13, 2025) ("An ALJ is not required to contact a consultative examiner whose opinion he finds vague; instead, the ALJ may discount that opinion due to vagueness.") (collecting cases).

Finally, the ALJ properly based his mental RFC determination on Webb's partially credited testimony. To begin, the ALJ considered Webb's statements in formulating an RFC finding. Indeed, he found "the opinion of state agency psychological consultants [that] the claimant *did not* have severe mental impairments" to be "unpersuasive," and found that other evidence and Webb's testimony "contain[ed] sufficient abnormal findings of mood disorder, anxiety, and trauma-related symptoms [to] which support severe mental impairments." Tr. at 27. "Overall," the ALJ found that "the evidence supports a conclusion that the claimant's mental conditions would cause some

14

limitation, but not to the degree alleged by the claimant," because "[p]sychiatric records consistently show the claimant's symptoms are stable with a combination of medication management, therapy, and regular exercise." Tr. at 26–27.[8] The ALJ has satisfied his burden to explain his reasons for partially discrediting Webb's subjective complaints and supported his decision with substantial evidence.

In short, the ALJ's determination is supported by substantial evidence, and Webb has failed to show that he was prejudiced by any of the alleged deficiencies in the proceedings before the ALJ.

## CONCLUSION

For the foregoing reasons, the recommendation of the Magistrate Judge is **ACCEPTED**, and the decision of the Commissioner is **AFFIRMED**.

The Clerk is **DIRECTED** to close this case.

It is so **ORDERED**.

**SIGNED** this 17th day of September, 2025.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[8] Moreover, despite Plaintiff's assertion that working exacerbate certain symptoms—such as difficulty managing his daily routine and self-care—medical evidence showed that Plaintiff in fact *benefited* from social interaction. *See, e.g.*, Tr. at 365, 400, 3155–56 (Plaintiff self-reported that he benefited from social connection, had increased mental stability when engaged in the structure of reporting to work for the day).